FILED

March 8, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 10:30 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

**BLAKE CARROLL,**              **Docket No.: 2015-05-0740**
        **Employee,**

v.                             **State File No.: 88639-2015**

**SERVICE CORPORATION**
**INTERNATIONAL,**
        **Employer.**          **Judge Dale Tipps**

---

## EXPEDITED HEARING ORDER
## DENYING TEMPORARY DISABILITY BENEFITS
### *(REVIEW OF THE FILE)*

---

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Blake Carroll, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Carroll is entitled to temporary disability benefits. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Carroll is likely to establish at a hearing on the merits he suffered a partial disability that resulted in a reduced ability to work. For the reasons set forth below, the Court finds Mr. Carroll is not entitled to the requested temporary disability benefits at this time.[1]

## History of Claim

Mr. Carroll is a thirty-five-year-old resident of Lewis County, Tennessee. While working for Service Corporation International (SCI) as a funeral director/embalmer on October 31, 2015, Mr. Carroll sustained injuries in a fall down a staircase. SCI accepted the claim and provided medical treatment and temporary disability benefits. Mr. Carroll filed this PBD when SCI refused to pay temporary partial disability benefits.

---

[1] A complete listing of the technical record and exhibits considered by the Court is attached to this Order as an appendix.

1

Records from Fast Pace Medical Clinic indicate Mr. Carroll saw Timothy Shelton, FNP on November 6, 2015. FNP Shelton diagnosed contusions of the right foot, left hand, and left front wall of thorax. He prescribed Naprosyn and took Mr. Carroll off work. On November 19, 2015, Mr. Shelton assigned light-duty restrictions through December 7, 2015, of no prolonged standing and no left-arm lifting over ten pounds. The Clinic modified those restrictions from December 9, 2015, through December 23, 2015, to "avoid prolonged standing."

On December 7, 2015, Mr. Carroll and the Tennessee Board of Funeral Directors, Embalmers, and Burial Services entered an Agreed Final Order. The administrative judge signed the Order, which stated Mr. Carroll's "licenses are invalid," on December 7, 2015.

SCI submitted the affidavit of Rodney Wells, who stated he was Mr. Carroll's supervisor. He also stated SCI accommodated Mr. Carroll's restrictions until December 7, 2015. On that date, Mr. Carroll brought Mr. Wells a letter from his attorney that advised he was going to lose his funeral director credentials and licenses. Mr. Wells terminated Mr. Carroll because he could no longer perform his job without his licenses. Mr. Wells stated the termination had nothing to do with Mr. Carroll's medical restrictions, and SCI would have continued to accommodate those restrictions if Mr. Carroll had retained his licenses.

SCI filed a Separation Notice with the Division of Employment Security on December 7, 2015. The reason given for discharge was, "Failure to Meet Credentials."

Counsel for the Board of Funeral Directors, Embalmers, and Burial Services submitted a Corrected Agreed Final Order on December 17, 2015. That order included a new paragraph that specified Mr. Carroll's Funeral Director and Embalmer Licenses were revoked, and instructed Mr. Carroll to immediately cease and desist performing any funeral or embalming services. The administrative judge entered the Agreed Final Order on January 5, 2016.

Mr. Carrol filed a Petition for Benefit Determination seeking temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Carroll filed a Request for Expedited Hearing and asked the Court to issue a ruling based on a review of the file without an evidentiary hearing. Upon determining no additional information was needed to determine whether Ms. Carrol was likely to prevail at a hearing on the merits of the claim, the Court issued a Docketing Notice on February 19, 2016, identifying the documents it received for review and advising the parties that they had until March 2, 2016, to file any objections to the admissibility of any of those documents. Neither party

filed any objections.[2]

In his written statement, Mr. Carroll alleged he is entitled to temporary partial disability benefits because SCI terminated his employment instead of providing continued light duty work in accommodation to his medical restrictions. He has not been able to find other employment because of those restrictions. Mr. Carroll also argued that, because the administrative law judge did not enter the Agreed Final Order until January 5, 2016, all his credentials were active at the time SCI terminated his employment.

In its Response, SCI contended Mr. Carroll's termination had nothing to do with his work injuries or restrictions and was due solely to his own actions. As a result, he is not entitled to temporary disability benefits. SCI also argued Mr. Carroll's restrictions were so minor, nothing but his lack of credentials prevented him from working for other employers.

**Findings of Fact and Conclusions of Law**

Because this case is in a posture of an Expedited Hearing, Mr. Carroll need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether he has met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Carroll nor SCI. *See* Tenn. Code Ann. § 50-6-116 (2015).

To establish a prima facie case for temporary total disability benefits, an employee must show that: (1) he or she was totally disabled and unable to work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004); *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). Mr. Carroll was not totally disabled during the time for which he requests benefits. Rather, his authorized medical provider had released him to return to work with restrictions. Consequently, he is not entitled to temporary total disability benefits.

Tennessee Code Annotated section 50-6-207(2) (2015) provides for temporary

---

[2] Both parties submitted additional materials, which the Court did not consider, pursuant to the Docketing Notice, which provided: "The Court will not consider any additional documentation not filed with the Request for Expedited Hearing or with the Response in Opposition to the Request for Expedited Hearing."

partial disability (TPD) during the period in which the injured employee is able to resume some gainful employment in a disabled condition, but has not reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005); *Jewell,* 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21. To establish entitlement to TPD benefits, the employee has the burden to show he had been assigned temporary work restrictions that rendered him partially disabled, and the partial disability resulted in a reduced ability to work because the employer was unwilling or unable to return the injured worker to work at or above his average weekly wage. *Williams*, 2005 Tenn. LEXIS 1032, at *7-8.

Mr. Carroll has shown he was assigned temporary work restrictions that rendered him partially disabled, at least for the period of November 19, 2015, through December 23, 2015.[3] It is also undisputed that SCI terminated his employment on December 7, 2015. Whether he is entitled to TPD benefits from December 7th through December 23rd is contingent on whether he can prove his partial disability resulted in a reduced ability to work because SCI was unwilling or unable to return him to work.

The Appeals Board recently held:

> [e]ven though an employee has a work-related injury for which temporary benefits are payable, the employer is entitled to enforce workplace rules. *Carter v. First Source Furniture Grp.*, 92 S.W.3d 367, 368 (Tenn. 2002). Thus, a termination due to a violation of a workplace rule may relieve an employer of its obligation to pay temporary disability benefits, provided the termination was related to the workplace violation. *See Marvin Windows of Tenn. v. Gardner*, No. W2011-01479-WC-R3-WC, 2012 Tenn. LEXIS 403, at *9 (Tenn. Workers' Comp. Panel June 8, 2012). When confronted with such a case, courts must "consider the employer's need to enforce workplace rules and the reasonableness of the contested rules." *Id.* at *10. An employer will not be penalized for enforcement of a policy if the court determines "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Durham v. Cracker Barrel Old Country Store, Inc.*, No. E2008-00708-WC-R3-WC, 2009 Tenn. LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Jan. 5, 2009).

*Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *8-9 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015).

---

[3] Mr. Carroll's position statements indicate he was under physicians restrictions past December 23, 2015, but he submitted no medical documentation in support of this contention.

4

The Court notes that SCI did not fire Mr. Carroll specifically for misconduct. Instead, it is undisputed that SCI terminated his employment because he could no longer perform his job without his licenses. The question then is whether the Court should construe Mr. Carroll's loss of credentials as employee misconduct.

The December 7, 2015 Agreed Final Order found Mr. Carroll admitted providing confidential information regarding the content of the National Board Examination to a third party. As a result, the International Conference of Funeral Service Examining Boards invalidated his examination scores, which resulted in invalidation of his licenses. The sole reason for Mr. Carroll's termination was his loss of certification. Mr. Carroll's termination, therefore, was a direct result of his misconduct, even though that misconduct did not occur at work. Further, the uncontroverted proof shows that SCI was willing and able to return Mr. Carroll to work, had he not engaged in conduct that legally disqualified him from that work.

Accordingly, the Court finds Mr. Carroll is unlikely to meet the burden established by *Williams* and prove his partial disability resulted in a reduced ability to work because SCI was unwilling or unable to return him to work. The Court further finds it would be inequitable to hold SCI responsible for TPD benefits when Mr. Carroll's termination was the result of his own professional misconduct.

Mr. Carroll's argument about the effective date of his license revocation is unpersuasive. First, the Court notes the original December 7, 2015 Order specifically identified Mr. Carroll's licenses in paragraph 2. Later, in paragraph 5, the Orders stated, "As a result of the invalidation of the Respondent's examination scores by the NBE, Respondent's licenses are invalid." Although the subsequent order corrected a clerical error, it did not rescind or modify this invalidation of Mr. Carroll's licenses.

Therefore, as a matter of law, Mr. Carroll has not come forward with sufficient evidence from which this Court may conclude he is likely to prevail at a hearing on the merits. His request for temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Carroll's claim against SCI and its workers' compensation carrier for the requested temporary disability benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on April 12, 2016, at 2:00 p.m.

5

**ENTERED** this the 8th day of March, 2016.

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

6

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. First Report of Injury
2. Tennessee Board of Funeral Examiners Agreed Final Order of December 7, 2015
3. Corrected Agreed Final Order of December 17, 2015
4. October 31, 2015 Return to Work Form from Southern Hills Medical Center
5. Medical records from Fast Pace Medical Clinic
6. December 7, 2015 Separation Notice
7. Funeral Director and Embalmer licenses
8. Copies of email correspondence between Mr. Carroll and Bureau personnel
9. Copies of email correspondence between Jamie Pena and Bureau personnel
10. January 19, 2016 Status Report from Mid-Tennessee Bone & Joint Clinic
11. Wage Statement
12. Affidavit of Rodney Wells

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 8th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Blake Carroll | | | X | blakeacarroll@gmail.com |
| Meredith Weaver, Esq. | | | X | Meredith.weaver@leitnerfirm.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**